————————

IN RE A.J.S.

[Cite as *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307.]

(No. 2007–1451—Submitted May 21, 2008—Decided October 21, 2008.)

O'DONNELL, J.

{¶ 1} This appeal presents two issues for our consideration: First, whether an order of a juvenile court denying a motion for a mandatory bindover[1] in a delinquency proceeding is a final appealable order, and second, if it is a final and appealable order, whether abuse of discretion or de novo is the proper standard for appellate review. We hold that the order of a juvenile court denying a motion for mandatory bindover bars the state from prosecuting a juvenile offender as an adult for a criminal offense. It therefore is the functional equivalent of a dismissal of a criminal indictment and constitutes a final order from which the state may appeal as a matter of right. Further, we clarify that because a mandatory-bindover proceeding presents mixed issues of law and fact, an appellate court should review the juvenile court's findings of fact for abuse of discretion and review its conclusions of law de novo. In this instance, the juvenile court abused its discretion when it failed to consider all the evidence presented. After reviewing the record, we conclude that the prosecutor presented sufficient evidence at the bindover hearing to establish probable cause to believe that A.J.S. committed the acts charged. Accordingly, we affirm the judgment of the appellate court.

## Factual History

{¶ 2} The transcript of the mandatory-bindover hearing conducted in the juvenile court reveals that on March 22, 2006, 16–year–old A.J.S. and his friends,

---

1. In certain situations specified by statute, the juvenile court is required to transfer a case to the general division of the common pleas court for prosecution of the juvenile defendant as an adult. R.C. 2152.12. These transfers are referred to as "mandatory bindovers" because if the statutory conditions are met, the judge *must* transfer jurisdiction.

Antwan Smith and Markala Cooper, entered the Body Language Productions tattoo shop in Whitehall. Because they created a disturbance, Joseph Morgan, a shop employee, asked them to leave. Morgan testified that while in the shop, A.J.S. and Smith stated that they "had heat" and that they were "gonna peel [a] cap back," as A.J.S. reached into his jacket as if he were going to grab something. Morgan understood that to mean that they were going to shoot him and the other employees.

{¶ 3} As Morgan and others escorted the three to the door, A.J.S. began to resist. In the ensuing struggle, A.J.S. broke the glass door of the shop, and Smith punched Morgan in the jaw.

{¶ 4} When A.J.S. and his friends did exit the building, they ran to a car that was in a parking lot a few buildings away from the tattoo shop. The employees followed them in an effort to obtain the license number from the car. Michael Miracle, one of the shop employees, tried to pry the license plate off the back of the car as A.J.S. revved the engine. A.J.S. then put the car in reverse and backed up; Miracle jumped out of the way, and Miracle and Morgan each picked up a stick or board and threw it at the car.

{¶ 5} At that point, A.J.S. stopped the car, he and Smith got out, and Smith began to walk toward Miracle. Morgan heard a gun cock and started running. When he heard the first shot, Morgan saw rain water spraying from the top of a nearby grease trap. Morgan and Miracle each heard a total of six shots, but neither saw who had the gun.

{¶ 6} Rochelle Farr, Smith's girlfriend, remained in the back seat of the car throughout the incident. She testified that she had seen A.J.S. get out of the car and start shooting at the ground. She could not remember exactly how many shots were fired, stating, "I really wasn't counting or nothing like that," but eventually stated that she remembered hearing "[m]aybe three" shots.

{¶ 7} Smith, who was walking toward Miracle when the shooting began, was shot in the leg. The bullet passed through his leg at an upward angle. When the police arrived, Miracle discovered that one of the shots had gone through his right pant leg. Another bullet had struck the top of a three-foot-tall grease trap no more than 12 feet from A.J.S.'s car and only about two feet from some of those who stood in the parking lot. Detective Steven Brown of the Whitehall Police Department recovered six shell casings from the parking lot and a spent bullet that had hit the grease trap.

{¶ 8} After completing his investigation, Detective Brown filed a delinquency complaint in the juvenile court alleging that A.J.S. had committed six counts of attempted murder. The state then moved the juvenile court to relinquish jurisdiction of the case to the general division in accordance with R.C. 2152.12(A)(1)(a), the mandatory-bindover provision.

{¶ 9} After conducting a mandatory-bindover hearing, the juvenile court denied the state's request for mandatory transfer. The court concluded that probable cause did not exist to establish that A.J.S. had committed attempted murder because, in its view, the state had failed to present any evidence to demonstrate the relative positions of those in the parking lot at the time of the shooting and also failed to prove beyond a reasonable doubt that it was impossible for all the bullets to have been fired at the ground.

{¶ 10} The state appealed the denial of its motion to the appellate court, alleging that the juvenile court had abused its discretion when it failed to find probable cause and failed to transfer the case to the general division.

{¶ 11} On appeal, the Tenth District Court of Appeals held that the juvenile court had erred in finding no probable cause to believe that A.J.S. had committed the charged acts, and it therefore reversed the juvenile court's judgment and remanded the case with instructions to enter the appropriate findings and to transfer the case. The appellate court divided on the question of the appropriate standard of review for mandatory-bindover proceedings.

{¶ 12} A.J.S. appealed to this court, and we accepted jurisdiction to consider two propositions of law: One, "Courts of appeals must apply an abuse of discretion standard when reviewing the trial court's probable cause determination in a mandatory bindover proceeding"; and two, "An appellate court is without jurisdiction to review a trial court's finding of probable cause because it is not a final appealable order."

## Final Appealable Order

{¶ 13} We first address A.J.S.'s proposition of law regarding whether the juvenile court's order denying the state's motion for mandatory transfer to the general division of the common pleas court constitutes a final appealable order.

{¶ 14} A.J.S. asserts that the juvenile court order denying the state's motion to relinquish jurisdiction is not a final order, because it does not determine the action or prevent a judgment. In response, the state posits that the juvenile court's decision is final because it effectively determines the action with respect to the court's jurisdiction and deprives the state of any meaningful remedy by way of appeal at the conclusion of the delinquency proceedings.

{¶ 15} R.C. 2505.02(B)(4) provides that an order granting or denying a provisional remedy is a final order if both of the following apply:

{¶ 16} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

{¶ 17} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

{¶ 18} Thus, R.C. 2505.02(B)(4) sets forth a three-pronged test for determining whether a decision granting or denying a provisional remedy is a final order. *State v. Muncie* (2001), 91 Ohio St.3d 440, 446, 746 N.E.2d 1092.

{¶ 19} The first prong of this test asks whether the proceeding is a provisional remedy. R.C. 2505.02(A)(3) defines "provisional remedy" as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code."

{¶ 20} While R.C. 2505.02 does not define "ancillary," this court has held that " '[a]n ancillary proceeding is one that is attendant upon or aids another proceeding.' " *Muncie,* 91 Ohio St.3d at 449, 746 N.E.2d 1092, quoting *Bishop v. Dresser Industries* (1999), 134 Ohio App.3d 321, 324, 730 N.E.2d 1079. We have previously held that the appointment of a receiver and an order for forced medication of an incompetent criminal defendant are provisional remedies, ancillary to the underlying actions. *Forest City Invest. Co. v. Haas* (1924), 110 Ohio St. 188, 192, 143 N.E. 549; *Muncie* at 450, 746 N.E.2d 1092. In contrast, we have held that a motion to intervene for the purpose of establishing a record in a separate action is not ancillary to the underlying proceeding, and therefore is not a provisional remedy. *Gehm v. Timberline Post & Frame,* 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, paragraph one of the syllabus.

{¶ 21} R.C. 2152.12(A)(1)(a) governs the transfer proceeding and provides: "After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing *shall* transfer the case if the child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged." (Emphasis added.)

{¶ 22} Thus, despite the general rule that the juvenile court has exclusive original jurisdiction over any child alleged to be delinquent (see R.C. 2151.23(A)(1)), the court has a duty to transfer a case when it determines that the elements of the transfer statute are met, to wit: (1) the charged act would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, (2) the child was 16 or 17 at the time of the act, (3) there is probable cause to believe that the child committed the act charged. R.C. 2152.12(A)(1)(a).

{¶ 23} Because it aids the juvenile court in determining whether it has a duty to transfer jurisdiction to the general division for criminal proceedings, a mandatory-bindover hearing in the juvenile court is ancillary to grand jury proceedings and to adult criminal prosecution. Therefore, a mandatory-bindover proceeding is a provisional remedy.

{¶ 24} The second and third prongs of the test for a final appealable order examine whether the order determines the action and prevents a judgment in favor of the appealing party with respect to the provisional remedy and whether the appealing party would have a meaningful or effective remedy following a final judgment in the case.

{¶ 25} Here, the state argues that the juvenile court's decision denying the state's motion for mandatory bindover conclusively decides the issue of transfer because double jeopardy concerns will deprive the state of a meaningful remedy at the conclusion of the juvenile delinquency proceeding.

{¶ 26} Juvenile delinquency proceedings are civil rather than criminal in character. See *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 25, citing *In re Anderson* (2001), 92 Ohio St.3d 63, 65, 748 N.E.2d 67. Despite this characterization, delinquency proceedings also have inherently criminal aspects. Id. at ¶ 26, citing *Anderson* at 65–66, 748 N.E.2d 67. For this reason, the United States Supreme Court has held that the Double Jeopardy Clause of the Fifth Amendment applies to juvenile delinquency proceedings. See *In re Cross,* 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 23–24, citing *Breed v. Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346.

{¶ 27} In *Breed,* the court determined that jeopardy attaches in a delinquency proceeding when the juvenile court begins to hear evidence as the trier of fact. *Breed,* 421 U.S. at 531, 95 S.Ct. 1779, 44 L.Ed.2d 346, citing *United States v. Jorn* (1971), 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543; *Serfass v. United States* (1975), 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265. Therefore, the court held that the prosecution of a child in adult court following an adjudicatory proceeding in juvenile court violated the Double Jeopardy Clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment. *Breed* at 541, 95 S.Ct. 1779, 44 L.Ed.2d 346.

{¶ 28} Because double jeopardy attaches once the adjudicatory phase of the delinquency proceedings commences, a juvenile court order finding no probable cause that the child committed the charged offense, and thus denying a motion for mandatory transfer, determines the action with respect to the provisional remedy and prevents a judgment in the state's favor. Moreover, it prevents the state from obtaining a meaningful or effective remedy by way of appeal at the conclusion of those proceedings. Thus, a juvenile court's decision denying a motion for mandatory bindover satisfies the test for determining whether the

denial of a provisional remedy constitutes a final appealable order as set forth in R.C. 2505.02(B)(4).

## Appeals as of Right by the State

{¶ 29} A.J.S. argues that even if the juvenile court's decision denying mandatory bindover is a final order, the court of appeals lacked jurisdiction to review that decision because the state did not seek leave to appeal as required by R.C. 2945.67 and App.R. 5(C).

{¶ 30} While R.C. 2505.03 generally provides that every final order or judgment may be reviewed on appeal, R.C. 2945.67(A) specifically governs appeals by the state in criminal and juvenile delinquency proceedings. It provides that the state may appeal as of right an order that (1) *grants a motion to dismiss all or any part of an indictment,* complaint, or information, (2) grants a motion to suppress evidence, (3) grants a motion for the return of seized property, and (4) grants postconviction relief. It further provides that with the exception of final verdicts, the state may appeal any other decision in a criminal or juvenile delinquency proceeding by leave of the appellate court.

{¶ 31} This court has held that even when a trial court's order constitutes a final order pursuant to R.C. 2505.02 and 2505.03, the state may appeal from that order only by leave of the court of appeals unless it is one of the types of orders that R.C. 2945.67(A) permits the state to appeal as of right. *State v. Matthews* (1998), 81 Ohio St.3d 375, 378, 691 N.E.2d 1041 (requiring the state to seek leave to appeal a trial court's order granting a new trial, even though such an order constitutes a final order pursuant to R.C. 2505.02(B)(3)).

{¶ 32} Citing *In re S.J.,* 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, the state contends that the juvenile court's decision is the functional equivalent of a dismissal because it forever bars the state from criminally prosecuting A.J.S. In *S.J.,* we determined that the juvenile court's sua sponte dismissal of one murder charge and amendment of another to voluntary manslaughter after it ruled that the state had failed to establish probable cause for the charged murder counts was the equivalent of a decision granting a motion to dismiss under R.C. 2945.67(A) from which the state could appeal as of right. Id. at ¶ 4, 13.

{¶ 33} Here, however, the juvenile court did not dismiss any charge or indictment; it merely denied the motion to transfer. In doing so, however, it prevented the state from seeking a criminal indictment to try A.J.S. as an adult. Because a juvenile court order denying a motion for mandatory bindover terminates the state's ability to secure an indictment for the acts charged, its denial of a mandatory transfer is the functional equivalent of the dismissal of an indictment. Thus, the state properly appealed as of right.

### Standard of Review

{¶ 34} The appellate court did not reach consensus on the proper appellate standard of review for a juvenile court's decision in a mandatory-bindover proceeding. Writing the lead opinion, Judge Sadler analogized the determination made at a mandatory-bindover proceeding to the determination of probable cause to search or stop in a suppression hearing. *In re A.J.S.*, 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997, at ¶ 23. In her view, the proper standard of review was to defer to the juvenile court's credibility determinations but to review its conclusions of law regarding the existence of probable cause de novo. Id. at ¶ 24.

{¶ 35} Applying an abuse-of-discretion standard, Judge Brown agreed that the juvenile court's decision denying mandatory transfer should be reversed. Id. at ¶ 51. In his dissent, Judge Whiteside stated that he would apply an abuse-of-discretion standard and would affirm the judgment of the juvenile court. Id. at ¶ 56.

{¶ 36} A.J.S. urges us to hold that the proper standard of review for a juvenile court's decision in a mandatory-bindover proceeding should be abuse of discretion. In support of his position, he argues that we have previously applied an abuse-of-discretion standard in our review of discretionary-bindover proceedings. Because Ohio's bindover statutes require the juvenile court to make a probable-cause determination in both mandatory- and discretionary-bindover proceedings, A.J.S. contends that the same standard of review should apply to both.

{¶ 37} The state counters that R.C. 2152.12(A)(1)(a) divests the juvenile court of discretion in mandatory-bindover proceedings. Thus, the state maintains, while an appellate court should defer to a juvenile court's reasonable assessment of witness credibility, it must apply a de novo standard of review to the court's application of the law to the facts.

{¶ 38} As in a mandatory-bindover proceeding, the juvenile court in a discretionary-bindover proceeding must determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.12(B)(1) and (2). However, in a discretionary-bindover proceeding, the court must also determine whether the child is amenable to care or rehabilitation within the juvenile system and whether, in order to ensure the safety of the community, the child should be subject to adult sanctions. R.C. 2151.12(B)(3). See also Juv.R. 30(C).

{¶ 39} A.J.S. is correct in his assertion that we have applied the abuse-of-discretion standard in our review of discretionary-bindover proceedings. A.J.S. cites the following cases to support this assertion: *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181; *State v. Carmichael* (1973), 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568, paragraphs one and two of the syllabus; *State v.*

*Douglas* (1985), 20 Ohio St.3d 34, 36–37, 20 OBR 282, 485 N.E.2d 711; and *State v. Golphin* (1998), 81 Ohio St.3d 543, 692 N.E.2d 608.

{¶ 40} However, the juvenile court's probable-cause determination was not at issue in any of those cases. Instead, in each of those cases, we considered the juvenile court's determination regarding the child's amenability to rehabilitation in the juvenile justice system. *Watson,* 47 Ohio St.3d at 95, 547 N.E.2d 1181; *Carmichael,* 35 Ohio St.2d at 6 and 8, 64 O.O.2d 1, 298 N.E.2d 568; *Douglas,* 20 Ohio St.3d at 35–36, 20 OBR 282, 485 N.E.2d 711; *Golphin,* 81 Ohio St.3d at 544, 692 N.E.2d 608. Because none of these cases involved a juvenile court's probable-cause determination, they are neither controlling nor persuasive.

{¶ 41} Both A.J.S. and the state refer to our decision in *State v. Iacona* (2001), 93 Ohio St.3d 83, 752 N.E.2d 937, to support their arguments regarding the standard-of-review question. A.J.S. claims that *Iacona* requires the juvenile court to evaluate the evidence adduced by both the state and the child in determining whether probable cause exists, whereas the state argues that *Iacona* prohibits the juvenile court from acting as the ultimate fact-finder.

{¶ 42} In *Iacona,* we considered whether the state's failure to comply with its duty to disclose evidence favorable to the juvenile before a transfer hearing required reversal of the child's subsequent criminal conviction. Addressing the state's burden in a bindover hearing, we stated: "[T]he state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now R.C. 2152.12(A)(1)(a)]. * * * In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but *need not* provide evidence proving guilt beyond a reasonable doubt." (Emphasis added.) *Iacona,* 93 Ohio St.3d at 93, 752 N.E.2d 937.

{¶ 43} Addressing the duty of the juvenile court, we stated that "in determining the existence of probable cause the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause *as well as* any evidence presented by the respondent that attacks probable cause." (Emphasis added.) Id., citing *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. Nonetheless, we expressly limited the court's review of the evidence presented at the bindover hearing, stating: *"Determination of the merits of the competing prosecution and defense theories, both of which [are ] credible, ultimately [is ] a matter for the factfinder at trial."* (Emphasis added.) Id. at 96, 752 N.E.2d 937.

{¶ 44} Thus, while the juvenile court has a duty to assess the credibility of the evidence and to determine whether the state has presented credible evidence going to each element of the charged offense, it is not permitted to exceed the

limited scope of the bindover hearing or to assume the role of the ultimate fact-finder.

{¶ 45} It is well settled that " '[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Amburgey* (1987), 33 Ohio St.3d 115, 117, 515 N.E.2d 925, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Therefore, we defer to the trial court's discretion in these matters. Id.

{¶ 46} Nonetheless, in *Iacona* we instructed that the state must present credible evidence of every element of an offense to support a finding of probable cause, but that evidence does not have to be unassailable. *Iacona*, 93 Ohio St.3d at 93 and 95, 752 N.E.2d 937. As the court of appeals observed, the juvenile court's role in a mandatory-bindover proceeding is that of a gatekeeper because it is "charged with evaluating whether sufficient credible evidence exists to warrant going forward with a prosecution on a charge that the legislature has determined triggers a mandatory transfer of jurisdiction to adult court." *A.J.S.*, 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997, at ¶ 22.

{¶ 47} Whether sufficient evidence exists to sustain a verdict in a criminal case is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, citing *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. Likewise, whether the state has produced sufficient evidence to support a finding of probable cause in a mandatory-bindover proceeding is a question of law, and we review questions of law de novo, *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.

{¶ 48} The United States Supreme Court has used a mixed standard of review in reviewing a trial court's determination of probable cause to stop or search, stating: "We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911.

{¶ 49} We have applied this mixed standard of review in reviewing court holdings in suppression hearings.

{¶ 50} In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, we examined the denial of a motion to suppress in a prosecution for driving under the influence in which the defendant alleged that the state had failed to substantially comply with certain requirements of the Ohio Administrative Code in conducting his blood-alcohol test. There, we stated: "Appellate review of a

motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539." Id. at ¶ 8.

{¶ 51} Following these lines of analysis, a juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law, and thus, we defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged.

### Application of the Mixed Standard of Review

{¶ 52} Here, the state sought to indict A.J.S. on several counts of attempted murder. Murder is defined as purposely causing the death of another. R.C. 2903.02. The attempt statute, R.C. 2923.02, provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Thus, in order to establish probable cause, the state had the burden to provide credible evidence that A.J.S. purposely engaged in conduct that, if successful, would have caused the death of another. See *Iacona*, 93 Ohio St.3d at 93, 752 N.E.2d 937.

{¶ 53} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Moreover, "[a]n intent to kill may be presumed where the natural and probable consequence of the wrongful act done is to produce death." *State v. Robinson* (1954), 161 Ohio St. 213, 218, 53 O.O. 96, 118 N.E.2d 517.

{¶ 54} As the appellate court noted, Rochelle Farr, an eyewitness, identified A.J.S. as the shooter and testified that she remembered hearing at least three shots. Joseph Morgan and Michael Miracle recalled hearing six shots.

{¶ 55} Detective Brown corroborated their testimony by stating that he recovered six shell casings from the parking lot. Thus, the state presented

sufficient evidence to demonstrate probable cause to believe that A.J.S. fired six bullets in the parking lot.

{¶ 56} The juvenile court made no factual findings in its entry denying transfer. However, at the hearing, the court expressed confusion over the positions of the persons in the parking lot and said it would need to have that information in order to determine whether A.J.S. had acted with purpose to kill. In its examination of the evidence offered to demonstrate probable cause regarding whether A.J.S. had acted with purpose to kill, the juvenile court erred in three respects.

{¶ 57} First, the court admitted that it did not recall the testimony regarding the positions of the victims in relation to A.J.S. and the grease trap. Accordingly, the court failed to consider the evidence introduced by the state to demonstrate that A.J.S. had purposely engaged in conduct that, if successful, would have caused the death of another. By not reviewing the testimony after stating that it could not recall the state's evidence on this issue at the conclusion of the hearing, the court abused its discretion because it failed to consider the evidence.

{¶ 58} During closing arguments, the court interrupted the prosecutor and stated: "[T]here is no evidence I know of that says [w]here was everyone at the time this happened, how close were they to one another," and "I still am not clear who was where at what time; how far they were from one another." Moreover, during closing argument, the court repeatedly urged the prosecutor to use a blackboard to illustrate the witnesses' testimony about where each person had stood, because, it stated, "from my notes, I'm not able to recreate the scene and to place all of those 10 or 11 people."

{¶ 59} However, Morgan's testimony details that five tattoo shop employees and one customer were in the parking lot at the time A.J.S. began shooting at them. Morgan stood about ten feet from the car and two feet from the grease trap when he heard the first shot. The car, which A.J.S. was standing near, was no more than 12 feet from the grease trap. Shop employee Jamie Hickey stood approximately seven feet behind Morgan and four feet behind the grease trap, while Carey Bowen stood about four feet behind and six feet to the side of the grease trap. Blake Kirkberg, a customer, stood 12 feet from the car and just to the right of the grease trap. Dustin Hysell stood approximately ten feet behind the grease trap. Thus, the record contained some credible evidence demonstrating the proximity of the victims to both A.J.S. and the grease trap that A.J.S. struck with a bullet during the shooting. In determining that probable cause did not exist, the juvenile court ignored this evidence.

{¶ 60} Second, the court exceeded the scope of its review of the evidence when it weighed the conflicting evidence regarding the trajectory of the bullets, and third, the court imposed a higher burden than was proper on the prosecution

when it concluded that the state had not proved that it was impossible that A.J.S. had fired the shots at the ground.

{¶ 61} The court stated: "[Y]ou're saying it's not possible for the—the bul—the shots to [be] fired into the ground. Well, it's the ca—it's the burden of the State to make that case if it's possible or not and * * * I don't see any evidence that would lead the Court to be able to agree that it was impossible he shot 'em all into the ground." Later, the court said to the prosecutor, "[S]how me where everyone was and why you're saying it's impossible for the shots to all have been fired into the ground and why it's impossible for them [to] have ricocheted." Obviously, the state has no burden to disprove alternate theories of the case at a bindover proceeding. See *Iacona,* 93 Ohio St.3d at 96, 752 N.E.2d 937.

{¶ 62} As we stated in *Iacona,* however, the state's burden during the bindover hearing is not to establish guilt beyond a reasonable doubt, but to produce evidence that raises more than a mere suspicion of guilt. *Iacona,* 93 Ohio St.3d at 93, 752 N.E.2d 937. By requiring the state to prove that it was impossible for A.J.S. to have shot the bullets at the ground, the juvenile court erroneously held the state to a higher standard of proof than was required.

{¶ 63} Evidence demonstrating that A.J.S. pointed a gun toward six people, standing as little as ten feet and no more than 25 feet away, that he fired six shots, one of which struck the top of a nearby three-foot high grease trap, combined with A.J.S.'s statement that he was going to "peel [a] cap back" and his accompanying gestures suggests that he attempted to cause the death of these persons.

{¶ 64} It is true that some of the evidence could support a determination that A.J.S. fired his gun at the ground to scare the victims, rather than firing with the purpose to kill them. Nevertheless, the state met its burden to establish probable cause by presenting evidence raising more than a mere suspicion that A.J.S. purposely attempted to cause the death of the victims. Pursuant to *Iacona,* the resolution of the conflicting theories of the evidence, both of which were credible, is a matter for the trier of fact at a trial on the merits of the case, not a matter for exercise of judicial discretion at a bindover hearing in the juvenile court.

{¶ 65} Because A.J.S. stipulated that he was 16 at the time of the charged acts, and because the state presented sufficient credible evidence to demonstrate probable cause to believe he committed the acts charged, we affirm the judgment of the appellate court and remand this cause to the juvenile court with instructions to transfer this case to the general division of the common pleas court for further proceedings.

*Judgment affirmed*
*and cause remanded.*

Moyer, C.J., and Lundberg Stratton, O'Connor, and Cupp, JJ., concur.

Pfeifer and Lanzinger, JJ., concur in judgment only.

———

Timothy Young, Ohio Public Defender, and Elizabeth R. Miller, Assistant Public Defender, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Katherine Press, Assistant Prosecuting Attorney, for appellee.

Katherine Hunt Federle and Angela Marie Lloyd, urging reversal on behalf of amicus curiae, the Justice for Children Project.