[Cite as *In re B.A.T.*, 2023-Ohio-3366.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE B.A.T.

A Minor Child

:
:
:
:
:

No. 112405

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 21, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-22108810

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Chadwick P. Cleveland, Assistant Prosecuting Attorneys, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellee.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals an order of the Cuyahoga County Common Pleas Court, Juvenile Division, denying its motions for mandatory and discretionary transfers of defendant-appellee, B.A.T., to the jurisdiction of the Cuyahoga County Court of Common Pleas, General Division. The state claims the following error:

The trial court erred in determining there was not probable cause to believe that appellee committed the acts alleged in the complaint.

We find merit to the appeal and reverse the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} In September 2022, the state filed an 11-count complaint against B.A.T., charging him with one count of aggravated robbery, three counts of robbery, and one count each of tampering with evidence, grand theft, improper handling of firearms in a motor vehicle, theft, identity fraud, telecommunications fraud, and misuse of a credit card. The aggravated robbery, robbery, grand theft, theft, and improper-handling-of-firearms-in-a-motor-vehicle charges included one- and three-year firearm specifications.

{¶ 3} Pursuant to R.C. 2152.12 and Juv.R. 30(A), the state filed a notice of mandatory bindover as to the aggravated-robbery charge and requested a discretionary bindover of the remaining charges. Accordingly, the juvenile court held a probable-cause hearing to determine whether there was probable cause to believe that B.A.T. committed the acts alleged in the complaint. Tyvon Ross ("Ross") testified at the hearing that he was carjacked on August 1, 2022, at approximately 1:45 a.m. He explained that he was sitting in his 2013 black Jeep Cherokee on Bridge Avenue in Cleveland when someone holding a gun opened the door and told him to "get out." (Tr. 15.) Ross determined, based on the carjacker's voice, that he was "a kid." (Tr. 16.)

**{¶ 4}** After the person got into his car, Ross attempted to throw him out, but the Jeep sped off, and Ross fell to the ground. (Tr. 16.) Shortly thereafter, a gray car pulled up to Ross and Ross asked the driver for help. The driver of the gray car indicated he would help but instead drove down the street and stopped to talk to the driver of Ross's car. (Tr. 16.)

**{¶ 5}** Ross chased the cars down the street until they disappeared. As he was running, he encountered a police officer and told the officer what happened. (Tr. 19.) He then called his girlfriend, who picked him up, and together they drove around the area looking for the stolen Jeep. Ross knew that the Jeep needed gas so they toured the area looking for gas stations without success. He then thought the thieves might go to the area of East 55th Street in Cleveland because there are gas stations open 24 hours a day, every day of the week. (Tr. 19.) When they arrived at the Marathon gas station on East 55th Street, Ross observed his car parked at pump number four. (Tr. 21, 24.) He called the police and followed the car after it left the gas station. A few minutes later, two males exited the Jeep and ran away through a baseball field. (Tr. 21-23.) Police met Ross at the field and towed his car; however, he was unable to give police a detailed description of the suspect who stole his car. He explained:

> I just know the dude that was driving the car, he had a black hoodie on. His friend, I want to say he had like a white or gray hoodie on, the fat kid he was with.

> I noticed when they was pulling out the drive — I mean pulling out the gas station, he had long braids or long dreads, whatever it was, but that was it.

(Tr. 26.) Ross further stated that his wallet was left in the car and that someone used his bank card to make a DoorDash purchase. (Tr. 24.)

{¶ 6} On cross-examination, Ross confirmed that the driver was approximately 5'8" or 5'9" in height and was wearing a black hoodie. He also stated that the driver had dreads in "a little ponytail" and that his gun was "a black gun with a beige or green top." (Tr. 28-29.) Ross later spoke with a detective over the phone regarding the incident. According to Ross, the detective told him he would call him at a later date to view photographs of suspects, but he never called and a lineup of suspects was never presented to Ross for identification. (Tr. 33-34.) When presented at the hearing with a photograph of a single, male suspect wearing a black hoodie and jeans, Ross was unable to identify him. (Tr. 40.)

{¶ 7} Detective Christy Cappelli of the Parma Police Department, testified that she was working as a patrol officer in Parma, Ohio on August 4, 2022, when she was involved in car chase of a stolen vehicle. (Tr. 43.) She pursued the vehicle down a dead-end street and observed two occupants exit the car and flee from the scene on foot. (Tr. 44.) The vehicle was left running and drove into a ravine. When Cappelli searched the area, she discovered a tan Sig Sauer handgun that was admitted into evidence as state's exhibit No. 4. (Tr. 43-44, 97.) According to Cappelli, the gun was not loaded and two individuals were arrested, but she could not provide their names. (Tr. 44.) The state alleged that the gun involved in this Parma case was the same gun used in the aggravated robbery of Ross.

{¶ 8} Detective Aaron Luther of the Cleveland Police Department, who investigated this case, testified that he went to the area of Bridge Avenue and Fulton Road to look for any items that may have been dropped by the victim or the suspects. (Tr. 59-60.) As part of his investigation, he obtained surveillance video footage from the Marathon gas station located at the corner of East 55th Street and Cedar Avenue in Cleveland. Detective Luther testified that he obtained this surveillance video because Ross's debit card was used at the gas station. According to Detective Luther, the surveillance video showed Ross's vehicle entering the gas station, two males exiting the vehicle and completing the transaction before the vehicle left the gas station. The surveillance video was not played for the court and was not entered into evidence.

{¶ 9} Detective Luther and his partner, Detective Robert Norman, questioned B.A.T. in his mother's presence in the parking lot of the Cleveland Police Department's Fourth District Headquarters. The interview was recorded on Detective Luther's body camera, and a portion of the interview was introduced at the hearing as state's exhibit No. 12. In the portion of the video played for the court, B.A.T. confesses to having committed the armed robbery and theft of Ross and his Jeep. At the court's request, the parties subsequently filed briefs regarding the admissibility of state's exhibit No. 12, and the juvenile court ultimately determined that it violated the rule of completeness and excluded it.

{¶ 10} Detective Luther testified that he also spoke with Eli Carrington ("Carrington"), an adult who was involved in the August 1, 2022 incident. After

speaking with Carrington, arrest warrants were issued for brothers Natavius and Kanyuan Morman, whose names were associated with the DoorDash account used to purchase food with Ross's debit card. According to Detective Luther, Natavius and Kanyuan also resembled the males depicted in the surveillance video footage. (Tr. 72.)

{¶ 11} Detective Luther testified on cross-examination that although Ross's vehicle was towed and processed for fingerprints, DNA, and trace evidence, he was not aware of any significant evidence being recovered from the vehicle. (Tr. 73-74.) He also stated that he never met with Ross in person and that he never intended to show him a lineup of suspects. (Tr. 75.)

{¶ 12} Detective Luther acknowledged that state's exhibit No. 12 does not contain the full interview he conducted with B.A.T. He admitted that earlier in the video, in a portion that was not played for the court, B.A.T. denied that he committed the robbery and claimed the Morman brothers were incriminating him. The Morman brothers were adults at the time of the incident, and B.A.T. was a juvenile. (Tr. 79-80.) B.A.T.'s mother was emotional and crying during the portion of the video that was not played for the court. Detective Luther also acknowledged that one of the Morman brothers had dreads down to his shoulders. (Tr. 87.) Finally, Detective Luther conceded that his partner, Detective Norman, stated during the interview of B.A.T. that B.A.T. was 5'2" tall. (Tr. 89.)

{¶ 13} After hearing the evidence and post-hearing briefs, the juvenile court concluded that there was insufficient evidence to establish probable cause that

B.A.T. committed the acts alleged in the complaint. In its judgment entry, the court explained, in relevant part:

> The Court finds that counsel timely filed their briefs and the Court reviewed and considered the arguments set forth in each brief. The Court finds that the objection by child through counsel is well taken. There is no dispute that the child was interviewed by two detectives for approximately one hour. Detective Luther appeared and testified to a portion of the interview that he conducted; however, defense counsel asserts that the child made other statements, including denial of involvement in the act(s) alleged, and the detective [sic] or portion of recording was not identified by Detective Luther, or another witness. The Court further finds that the testimony of the alleged victim described the one suspect who displayed the firearm as 5'8" or 5'9" with dread-locked hair and black hoody, and who was later observed bailing from the alleged victim's car; that description is different from the second suspect he witnessed, whom the alleged victim described as a "fat kid" with a gray hoody. The evidence from the interview appears to indicate that the child herein was observed as approximately 5'2" and short hair. The Court further finds that the alleged weapon was not found on the child's person but near the location where the alleged victim's car was abandoned after pursuit, the 2 suspects had bailed, ran through an athletic field and were not apprehended, with the purported weapon located next to a fence. The Court after due consideration, the court finds that Exhibit 12 was not complete to allow child's counsel to cross examine the witness as to the child's interview, such that his objection is sustained.
>
> Upon conclusion of all the evidence presented relating to the matter herein and the arguments of counsel, the Court finds that the child was 17 years of age at the time of the conduct charged and that there is not probable cause to believe that the child committed the acts alleged in the complaint.

The state now appeals the juvenile court's judgment pursuant to R.C. 2945.67, as interpreted by the Ohio Supreme Court in *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629.

## II. Law and Analysis

{¶ 14} In its sole assignment of error, the state argues the trial court erred in finding that there was no probable cause to believe that B.A.T. committed the acts alleged in the complaint.

{¶ 15} As a general rule, juvenile courts have exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11, citing R.C. 2151.23(A). However, R.C. 2151.10 and 2151.12, in conjunction with Juv.R. 30, create a narrow exception to the general rule and provide for the mandatory or discretionary transfer of cases involving allegedly-delinquent children to the adult criminal court under certain statutorily-prescribed situations. R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory bindover and provides, in relevant part:

> (A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:
>
> * * *
>
> (2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:
>
> (a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.
>
> (b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged

and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

{¶ 16} Aggravated robbery is a category-two offense. R.C. 2152.02(BB)(1). B.A.T. was 17 years old at the time the offense was committed, and the complaint alleges that he displayed a firearm during the commission of the offense. Indeed, the charges included one- and three-year firearm specifications. Therefore, a mandatory-bindover proceeding was required. R.C. 2152.10(A)(2)(b). *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 13. And if the child is eligible for mandatory bindover, the trial court must transfer the case to the adult criminal court if "there is probable cause to believe that the child committed the act charged that is a category two offense." R.C. 2152.12(A)(1)(b)(ii); *In re J.R.*, 8th Dist. Cuyahoga No. 110241, 2021-Ohio-2272, ¶ 28.

{¶ 17} To establish probable cause in a bindover proceeding, the state must present credible evidence supporting each element of the alleged offense. *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001). "[P]robable cause exists when the facts and circumstances are sufficient to provide a reasonable belief that the accused has committed a crime." *State v. Martin*, 170 Ohio St.3d 181, 2022-Ohio-4175, 209 N.E.3d 688, ¶ 17. However, "probable cause requires 'more than bare suspicion.'" *Id.* at ¶ 18, quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). "The circumstances must demonstrate a 'fair probability' that a crime has been committed." *Id.* at ¶ 18, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, probable cause

requires "credible evidence that 'raises more than a mere suspicion of guilt'" but does not require evidence of guilt beyond a reasonable doubt. *In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 10, quoting *Iacona* at 93.

> [T]he juvenile court's role in a mandatory-bindover proceeding is that of a gatekeeper because it is "charged with evaluating whether sufficient credible evidence exists to warrant going forward with a prosecution on a charge that the legislature has determined triggers a mandatory transfer of jurisdiction to adult court."

*In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 46, quoting *In re A.J.S.*, 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997, ¶ 22 (10th Dist.).

{¶ 18} Our review of the juvenile court's probable-cause determination involves questions of both law and fact. "[W]e defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *Id*. at ¶ 51.

{¶ 19} We do not apply a manifest-weight-of-the-evidence standard of review. In *Martin*, the Ohio Supreme Court explained that it is not possible to conduct a manifest-weight review of the evidence presented during the probable-cause portion of a juvenile-bindover hearing because the state is not required to marshal all of its evidence at the probable-cause phase of the proceedings *Id*. at ¶ 30. The state is only required to present "sufficient credible evidence" to establish probable cause. *Id*., citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 65. Because neither party is required to present the entirety of its evidence at the probable-cause hearing, we cannot fairly determine whether "the

greater amount" of credible evidence favors one side or the other. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). As previously stated, the juvenile court's role in the bindover hearing is that of a gatekeeper as opposed to the ultimate trier of fact. *Id.* at ¶ 31.

{¶ 20} As previously stated, B.A.T. was subject to mandatory-bindover proceedings because he was charged with committing the category-two offense of aggravated robbery in violation of R.C. 2911.01(A)(1). R.C. 2911.01(A)(1) provides, in relevant part:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

{¶ 21} It is undisputed that Ross was robbed at gunpoint and that the perpetrator stole his car and wallet. The perpetrator's identity was the primary issue at the probable-cause hearing, and the juvenile court determined that probable cause did not exist to justify a belief that B.A.T. was the person who committed the acts alleged in the complaint. Indeed, Ross described the suspect as being 5'8" or 5'9" and other evidence suggested that B.A.T. was 5'2". Ross described the gun used in the crimes as "black with a beige or green top," and the gun later found at another crime scene in Parma where B.A.T. was allegedly present was tan with a small amount of black on the top of the gun. There was also no evidence that B.A.T. himself possessed the gun found at the scene in Parma, and Ross could not identify B.A.T. as the person who robbed him. There were no fingerprints or DNA recovered

from Ross's Jeep linking B.A.T. to the crimes, and the Morman brothers resembled the individuals depicted in the Marathon gas station surveillance video. Detective Luther admitted that one of the Morman brothers had long dread-locked hair, and Ross testified that the person driving his Jeep at the Marathon station had long dread locks. B.A.T., as depicted in state's exhibit No. 12, has short hair.

{¶ 22} However, in video footage from Detective Luther's body camera, B.A.T. admitted that he committed the armed robbery of Ross and his vehicle. He also identified himself in surveillance footage from the Marathon gas station on East 55th Street, where Ross stated he later recovered his car on the night of the robbery. Thus, state's exhibit No. 12 contains the most compelling evidence identifying B.A.T. as the person who committed the acts alleged in the complaint.

{¶ 23} The juvenile court excluded state's exhibit No. 12 pursuant to the "rule of completeness" set forth in Evid.R. 106, because it did not include the entirety of Detective Luther's hour-long interview of B.A.T.; it only included a 12-minute portion wherein B.A.T. confessed to the crimes. The defense asserted, in post-hearing briefing, that B.A.T. repeatedly denied his involvement in the crimes alleged in the complaint in redacted portions of the body-camera video and that the redacted portions of the video should have been provided in order to properly assess the credibility of B.A.T.'s confession.

{¶ 24} A probable-cause hearing is a preliminary, non-adjudicatory proceeding wherein the court's function is not to determine guilt, but rather whether there is probable cause to believe the juvenile committed the alleged acts. *In re J.R.*,

8th Dist. Cuyahoga No. 110241, 2021-Ohio-2272, at ¶ 37; *State v. Burns*, 8th Dist. Cuyahoga No. 108468, 2020-Ohio-3966, ¶ 74; *State v. Starling*, 2d Dist. Clark No. 2018-CA-34, 2019-Ohio-1478, ¶ 26. Because a probable-cause hearing is non-adjudicatory, the evidence presented at the hearing does not need to meet the same standards as those for admissibility at trial. *In re J.R.* at ¶ 37; *Burns* at ¶ 74. Indeed, the Ohio Rules of Evidence do not apply to probable-cause hearings. *See Burns* at ¶ 77 ("defense counsel's motion to suppress was not properly before the juvenile court at the time of the probable cause hearing"); *In re J.R.* at ¶ 37 ("Confrontation Clause standards for admissibility of evidence and the Ohio Rules of Evidence do not apply to probable cause hearings."), citing *State v. Powell*, 4th Dist. Gallia No. 20CA3, 2021-Ohio-200, ¶ 23, citing *Burns* at ¶ 74; *Starling* at ¶ 26-28; *In re B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, ¶ 48 (7th Dist.); *State v. Grays*, 1st Dist. Hamilton No. C-790914, 1981 Ohio App. LEXIS 12488, 3-4 (Jan. 14, 1981) ("it cannot seriously be argued that testimony inadmissible at trial under the rules of evidence cannot be considered in a preliminary proceeding such as [a probable cause hearing in juvenile court]"). Therefore, the juvenile court erred in excluding state's exhibit No. 12 and we now consider it in conjunction with the other evidence. *See In re J.R.* (considering excluded hearsay testimony in reversing juvenile court's probable-cause determination).

{¶ 25} In state's exhibit No. 12, which was played in open court, B.A.T. admits that he robbed Ross of his Jeep and drove a short distance before he pulled over, got into the passenger seat, and allowed a friend to drive it because B.A.T. did not have

much experience driving cars. This testimony is consistent with Ross's testimony that he observed the gray vehicle stop next to his Jeep after it was stolen and before it disappeared down the road. B.A.T. admitted he committed the robbery but maintained the gun he used to perpetrate the crimes was a fake gun and that he threw it away after the robbery. Moreover, when Detective Luther showed B.A.T. still photographs taken from the surveillance video at the Marathon gas station on East 55th Street, he identified himself in the pictures.

{¶ 26} Ross testified that in addition to his Jeep, the suspect also took his wallet and used his bank card to purchase something from the Marathon gas station where he observed his Jeep, 45 minutes after the robbery. (Tr. 24-25.) He discovered the charge when his girlfriend received a notification from an online banking application. Moreover, Detective Luther testified that B.A.T. confessed to being the person who stole Ross's Jeep at gunpoint, albeit with an allegedly fake gun. Thus, despite some conflicting evidence regarding the suspect's appearance, there was a "fair probability" that B.A.T. committed the acts alleged in the complaint, including the category-two offense of aggravated robbery. Therefore, the juvenile court erred in denying the state's request for mandatory bindover and the sole assignment of error is sustained.

{¶ 27} When an appellate court reverses a juvenile court's finding of no probable cause and determines there is probable cause to believe that the juvenile committed the acts alleged in the complaint, the proper remedy is to reverse and remand with instructions to enter a mandatory transfer order. *In re J.R.,* 8th Dist.

Cuyahoga No. 110241, 2021-Ohio-2272, at ¶ 44, citing *In re B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, at ¶ 52-53, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 65. We, therefore, reverse the juvenile court's order and remand the case to the juvenile court with instructions to enter an order of mandatory transfer.

{¶ 28} Ohio's bindover scheme permits other nonqualifying, or "discretionary-bindover" offenses to be transferred to the adult criminal court without an amenability hearing if there is probable cause to believe (1) that the juvenile committed a mandatory-bindover offense, and (2) that the mandatory-bindover offense and the discretionary-bindover offenses "arose from a common nucleus of operative facts." *State v. Cockrell*, 2016-Ohio-5797, 70 N.E.3d 1168, ¶ 17 (1st Dist.). The discretionary offenses, namely grand theft of a motor vehicle, improper handling of a firearm in a motor vehicle, theft, identity fraud, misuse of credit cards, and telecommunications fraud arose out of the same conduct and were committed as part of a common course of conduct.

{¶ 29} Moreover, based on the evidence in the record, we find probable cause to believe that B.A.T. committed these discretionary offenses. Ross testified that his wallet was in his Jeep when it was stolen and that whoever stole his Jeep used his debit card. Detective Luther testified that Ross's debit card was used both at the Marathon gas station and to purchase food via DoorDash. B.A.T. identified himself in still photographs taken from the surveillance cameras at the Marathon gas

station, thus placing himself at the scene of the crimes committed there. (*See* state's exhibit No. 12.)

{¶ 30} In addition, Detective Luther testified that he obtained the name from DoorDash of the establishment that sold the food purchased with Ross's debit card. A witness from the establishment indicated that B.A.T. was the person who placed the order. Therefore, because there is a fair probability that B.A.T. committed the discretionary offenses, these offenses should be bound over to the adult court with the mandatory-bindover offense.

{¶ 31} Judgment reversed. Case remanded with instructions to enter an order of transferring the mandatory and discretionary offenses to the Cuyahoga County Court of Common Pleas, General Division.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR