[Cite as *State v. Bradford*, 2014-Ohio-904.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
|     Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2013 CA 00124 |
| KENNETH BRADFORD | |
|     Defendant-Appellant | O P I N I O N |



CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, Case No.  2012 CR 01905


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    March 10, 2014


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
KATHLEEN O. TATARSKY
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

For Defendant-Appellant

SHERYL A. TRZASKA
ASSISTANT PUBLIC DEFENDER
250 East Broad Street
Suite 1400
Columbus, Ohio  43215

*Wise, P. J.*

{¶1}  Appellant Kenneth Bradford appeals his sentence entered in the Stark County Common Pleas Court following a guilty plea to eight counts of Aggravated Robbery, two firearm specifications and two counts of Robbery.

{¶2}  Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}  On December 7, 2012, Ohio State Highway Patrolman Maier stopped a vehicle in Canton, Ohio, that was traveling 10 miles per hour over the speed limit. (1/17/2013 T. at 4). Khristian Seymour, an adult, was driving the car, which was registered to him. (1/17/2013 T. at 7). The patrolman found a firearm under the driver's seat. Id. The only passenger in the vehicle was seventeen-year old Kenneth Bradford. Both Seymour and Bradford were taken into custody, and a search of the vehicle produced items that were believed to have been taken from a recent robbery at a Sheetz gas station. (1/17/2013 T. at 5). Seymour admitted to participating in the robbery at Sheetz and also admitted to participating in other recent robberies in the Canton area (1/15/2013 T. at 11, 34, 41; 1/17/2013 T. at 13, 25, 23). Seymour told law enforcement that Bradford and another co-defendant known as "D" also participated in those robberies. (1/15/2013 T. at 11, 34, 41; 1/17/2013 T. at 13, 15, 23).

{¶4}  As a result of the traffic stop and Seymour's statements to law enforcement, Appellant Kenneth Bradford was charged with 14 counts of aggravated robbery, in violation of R.C. §2911.01A)(1), first-degree felonies if committed by an adult. Each charge included the specification that Appellant had a deadly weapon on his

person or under his control and displayed, brandished, indicated possession, or used the weapon.

{¶5} Due to the fact Appellant was 17 years old at the time of the alleged offenses, the cases originated in juvenile court; however, if the State presented some credible evidence as to each element of each offense and established probable cause, each charge was subject to mandatory transfer for criminal prosecution. R.C. §2152.10(A)(2); §2152.12(A)(1)(b).

{¶6} On January 15, 2013, and January 17, 2013, the juvenile court conducted a probable cause hearing. None of the victims or alleged co-defendants testified; instead, several law enforcement personnel testified regarding their investigations, particularly their conversations with Appellant's adult co-defendant, Khristian Seymour. (1/15/2013 T. at 11, 34, 41; 1/17/2013 T. at 13, 15, 23). The juvenile court decided the State established probable cause for each count except for count (11) eleven, and transferred Counts One through Ten and Twelve through Fourteen for criminal prosecution. (1/22/2013 Juvenile Court Judgment Entry).

{¶7} After transfer, a Stark County grand jury indicted Appellant on two (2) counts of aggravated robbery with firearm specifications in Counts One and Two; six (6) counts of aggravated robbery without firearm specifications in counts Three through Seven, and Count Nine; and two counts of robbery in Counts Ten and Eleven.

{¶8} On May 17, 2013, three days before trial, defense counsel filed a motion to dismiss all of the charges, asserting that the court of common pleas was without jurisdiction to proceed because there was insufficient evidence to establish probable

cause that Appellant possessed a firearm in the commission of the offenses; thus, a mandatory transfer to the adult system was improper.

{¶9} On May 20, 2013, the trial court denied the motion, and a jury trial commenced.

{¶10} On the first day of trial the State presented ten witnesses, including various law enforcement personnel and victims. Various exhibits were introduced, including video surveillance from cameras at the scene of the various robberies.

{¶11} Before the trial resumed on the second day, Appellant announced that he did not wish to continue the jury trial; instead he wished to enter a plea of guilty to all of the charges of aggravated robbery and robbery in the indictment.

{¶12} The trial court questioned Appellant regarding his wish to plead guilty, reminding him that he was giving up his right to appeal decisions made by the court including the decision to overrule his motion to dismiss the case because he was a juvenile. Appellant told the trial court that he understood he was giving up those rights.

{¶13} Appellant then entered pleas of guilty to all the charges in the indictment.

{¶14} After a recess, Appellant returned to the trial court for sentencing. The trial court sentenced Appellant to four years on Counts 1 and 2 and three years on each firearm specification for a total of fourteen years. Appellant was also sentenced to 4 years on Count 3, which was ordered to be served consecutively to the sentences imposed on Counts 1 and 2. As to Counts 4 through 7 and 9 through 11, Appellant was sentenced to four years on each count to be served concurrently to each other and the sentences imposed on Counts 1, 2 and 3. In all, Appellant was sentenced to a prison term of eighteen years.

{¶15} Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶16} "I. THE JUVENILE COURT ERRED WHEN IT FOUND THAT PROBABLE CAUSE WAS ESTABLISHED IN COUNTS ONE THROUGH TEN OF THE JUVENILE COMPLAINT.

{¶17} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO SENTENCE KENNETH BRADFORD IN ACCORDANCE WITH R.C. 2152.121 FOR COUNTS THREE THROUGH SEVEN, AND NINE THROUGH ELEVEN, AND FAILED TO REMAND THE MATTER TO THE JUVENILE COURT AFTER IMPOSING A STAYED SENTENCE.

{¶18} "III. THE TRIAL COURT ERRED WHEN IT SENTENCED KENNETH BRADFORD TO CONSECUTIVE SENTENCES WITHOUT COMPLYING WITH R.C. 2929.14, IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶19} "IV. THE JUVENILE COURT ERRED WHEN IT TRANSFERRED KENNETH BRADFORD'S CASE FOR CRIMINAL PROSECUTION BECAUSE THE MANDATORY TRANSFER PROVISIONS IN R.C. 2152.10(A)(2)(B) AND R.C. 2152.12(A)(1)(B) VIOLATE A CHILD'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶20} "V. THE JUVENILE COURT ERRED WHEN IT TRANSFERRED KENNETH BRADFORD'S CASE TO ADULT COURT BECAUSE THE MANDATORY

TRANSFER PROVISIONS IN R.C. 2152.10(A)(2)(B) AND R.C. 2152.12(A)(1)(B) VIOLATE A CHILD'S RIGHT TO EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION.

**{¶21}** "VI. THE JUVENILE COURT ERRED WHEN IT TRANSFERRED KENNETH BRADFORD FOR CRIMINAL PROSECUTION BECAUSE THE MANDATORY TRANSFER PROVISIONS IN R.C. 2152.10(A)(2)(B) AND R.C. 2152.12(A)(1)(B) VIOLATE THE PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION.

**{¶22}** "VII. DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO AN UNCONSTITUTIONAL TRANSFER, AND ILLEGAL SENTENCE, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**I**

**{¶23}** In his First Assignment of Error, Appellant argues that the juvenile court erred when it found probable cause was established in counts one through ten of the juvenile complaint. We disagree.

**{¶24}** Initially, we note Appellant did not raise this issue before the juvenile court and, in fact, acknowledged through counsel that the transfer to the general division of the common pleas court was appropriate during sentencing. (Sent. T. at 291). Therefore, we are limited to plain-error review. To establish plain error, Appellant must

point to an obvious error that affected the outcome of the proceedings below. *State v. Rohrbaugh,* 126 Ohio St.3d 421, 2010-Ohio-3286, ¶ 6. Reversal is warranted only if the outcome "clearly would have been different absent the error." *State v. Hill,* 92 Ohio St.3d 191, 203, 749 N.E.2d 274, 2001-Ohio-141.

**{¶25}** The juvenile court has exclusive original jurisdiction to hear complaints alleging that a juvenile is a delinquent child by reason of having committed an offense that would be a crime if committed by an adult. R.C. §2151.23(A)(1); *State v. Wilson,* 73 Ohio St.3d 40, 44, 652 N.E.2d 196, 1995–Ohio–217.

**{¶26}** However, R.C. §2152.10(A) provides that, under certain circumstances, a juvenile court must transfer the case to the general division of the common pleas court in order to prosecute the juvenile defendant as an adult. *In re A.J.S.,* 120 Ohio St.3d 185, 897 N.E.2d 629, 2008–Ohio–5307; *State v. Hanning,* 89 Ohio St.3d 86, 90, 728 N.E.2d 1059, 2000–Ohio–436. These transfers are referred to as "mandatory bindovers." *In re A.J.S.* at ¶1.

**{¶27}** Revised Code §2152.12(A)(1)(b), provides as follows:

**{¶28}** (A)(1)(b) After a complaint has been filed alleging that a child is a delinquent child by reason of committing a category two offense, the juvenile court at a hearing shall transfer the case if section 2152.10 of the Revised Code requires the mandatory transfer of the case and there is probable cause to believe that the child committed the act charged.

**{¶29}** As relevant here, R.C. §2152.10(A)(2)(b) states that a child who is alleged to be a delinquent child is eligible for mandatory bind-over to the general division if (1) the child is charged with a category two offense other than kidnapping, (2) the child is

16 years of age or older at the time of the commission of the act charged, and (3) the child is alleged to have had a firearm on or about the child's person while committing the act charged and displayed, brandished, indicated possession of or used the firearm to facilitate the act charged.

{¶30} Aggravated robbery as charged in the complaint against the child is a category two offense. *See* R.C. §2152.02(CC)(1). The only matters for resolution in the bind-over hearing were the age of the child at the time of the robbery and whether he possessed and brandished or used a firearm to facilitate the robbery.

{¶31} We find initially that the acts charged in the complaint in this matter would constitute the offense of aggravated robbery, if committed by an adult, a category two offense. Further, it was stipulated that Appellant was 17 years old at the time of the offense. The charge therefore brings the case within the mandatory bind-over provisions. R.C. §2152.10(A) and §2152.12(A)(1); Juv.R. 30(A).

{¶32} In *In re M.P.,* 124 Ohio St.3d 445, 2010–Ohio–599, 923 N.E.2d 584, the Supreme Court of Ohio stated:

{¶33} When the state requests a mandatory bind-over, the juvenile court determines whether the child is eligible for mandatory bind-over according to the child's age, the nature of the act, and other circumstances, and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.10(A) and 2152.12(A)(1); Juv.R. 30(A). If the child is eligible for mandatory bind-over and if probable cause exists to believe that the juvenile did commit the acts charged, the only procedural step remaining is for the court to enter the order of transfer. Juv.R. 30(B). *Id.* at ¶ 11.

**{¶34}** Appellant argues that the State failed to provide credible evidence of every element of the offense of aggravated robbery to support a finding of probable cause to believe that he committed the offenses in Counts 1 through 10, namely that he personally used a firearm in the commission of these robberies.

**{¶35}** The probable cause standard for mandatory bind-over requires the state to provide credible evidence of every element of an offense to support a finding of probable cause to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. §2152.12(B). *State v. Iacona,* 93 Ohio St.3d 83, 93, 2001–Ohio–1292, 752 N.E.2d 937. Probable cause in this context is not guilt beyond a reasonable doubt; it is evidence that raises more than a suspicion of guilt. *In re A.J.S.,* 120 Ohio St.3d 185, 2008–Ohio–5307, 897 N.E.2d 629, ¶ 16. This standard requires the juvenile court to "evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause." *Iacona* at 93.

**{¶36}** Our review of the juvenile division's decision is mixed: we defer to the court's credibility determinations by reviewing for an abuse of discretion, but we conduct a de novo review of the legal conclusion whether there was probable cause to believe that the juvenile committed the charged act. *In re A.J.S.* at ¶ 1.

**{¶37}** Pursuant to *Iacona,* the juvenile court is required to evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by Appellant that attacks probable cause. *Iacona* at 93.

**{¶38}** At the bind-over hearing in this matter, the State presented testimony from detectives from Perry Township, the City of Canton, the Stark County Sheriff's office and the State Highway Patrol.

**{¶39}** Trooper Maier testified as to the traffic stop which led to Appellant's arrest. He stated that as a result of the stop, he found among other things, a loaded .32 caliber silver revolver with a white handle, ski masks, gloves, a large amount of cash with bank wrappers still attached, and key rings that appeared to belong to a gas station.

**{¶40}** Each of the police or detectives testified as to their investigation, and that they had reviewed video footage which showed two men resembling Appellant and his co-defendant.

<u>ATM – Counts 1, 2, 4, 5 and 6</u>

**{¶41}** Det. George of the Canton Police Department testified that he investigated the robberies which occurred at the Huntington Bank ATM on November 30th (Count 1-2, two victims); December 3rd (Count 4 and 5 - two victims) and December 3rd (Count 6 - one victim). (T. at 10-11). He stated that he obtained still photographs from the camera inside the ATM and that these pictures revealed two robbers in each of the robberies except Count 6. (T. II. at 12). He stated that the victim in Count 6 stated that there was only one robber. *Id.* He further stated that there was another victim in a robbery at the same ATM on Dec. 4th who stated that there were two robbers but that the camera didn't capture their image because he was walking away from the machine when he was approached by the two suspects who then chased him down and assaulted him. *Id.* He stated that both men had guns. *Id.*

{¶42} Det. George also interviewed Khristian Seymour who identified both himself and Appellant as the suspects in the Nov. 30th robbery and the first Dec. 3rd robbery. (T. II. at 13). He stated that Seymour stated that he did not commit the second robbery on Dec. 3rd, but that he had loaned Appellant his car and some clothing that night. (T. at 14). As to that robbery, Det. George stated that the still photograph taken from the ATM was consistent with that of Appellant. (T. II at 15).

Your Pizza Shop – Count 3

{¶43} As to Count 3, Detective Adams from the Canton Police Department testified that he investigated the December 2nd robbery of Your Pizza Shop. (T. at 16). He stated the victims described the robbers as two males brandishing handguns. He also reviewed the surveillance video and stated that both of the robbers came into the pizza shop with guns in their hands, one with a revolver and one with a semi-automatic. (T. at 20). As part of his investigation, he also interviewed Khristian Seymour who told him that both he and Appellant were armed with guns when they robbed the pizza shop. (T. at 21). He stated that in addition to the cash taken, the robbers also took a .32 caliber four shot chrome revolver with white pistol grips from underneath the counter. (T. at 18).

Circle K – Counts 7 and 8

{¶44} Detective Hostetler with the Stark Sheriff's Office testified as to the robberies which took place at the Circle K on December 4th and December 6th. Regarding the December 4th robbery, Det. Hostetler stated that the gas station clerk told him that three men robbed his gas station and that two of those three men had guns. (T. at 29). He stated that he reviewed the surveillance video and that one of the

suspects had a silver or chrome revolver and the other had what looked like a silver and black semi-automatic handgun. (T. at 30).

**{¶45}** As to the Dec. 6th robbery, Det. Hostetler stated that the same clerk was working and she stated that the robber appeared to be one of the same men from the previous robbery. (T. at 30). He further stated that the suspect was carrying a silver revolver. *Id.* As part of his investigation, he also interviewed Khristian Seymour who identified Appellant and himself as being the two men with guns in the video from the Dec. 4th robbery and himself as the robber in the Dec. 6th robbery. (T. at 33). He stated that Seymour informed him Appellant was also present at the Dec. 6th robbery, but that he was outside acting as a lookout. (T. at 34).

<u>Sheetz – Counts 9 ,10 and 11</u>

**{¶46}** As to counts 9 and 11, Detective Wellman, with the Perry Police Department, testified that he was present during the questioning of the co-defendant Khristian Seymour and he admitted that he and Appellant robbed the Sheetz station on December 7th. (T. at 6). He also stated he reviewed the surveillance video from the Sheetz station and the suspects in the video matched the body size and appearance of Appellant and Seymour. (T. at 8). He further stated that the shorter of the two men in the video had a gun, and that man was Appellant. (T. at 8-9). Additionally, he described the gun as being a .32 caliber handgun with a pearl handle. (T. at 10).

**{¶47}** Based on the above, we find the testimony and evidence raises more than a suspicion of guilt, and the trial court did not err in finding probable cause existed in this matter.

**{¶48}** Appellant's First Assignment of Error is overruled.

**II**

**{¶49}** In his Second Assignment of Error, Appellant argues the trial court erred when it failed to sentence him in accordance with R.C. §2152.121 for counts three through seven, and nine through eleven, and further failed to remand the matter to the juvenile court after imposing a stayed sentence.  We disagree.

**{¶50}** Again, we begin by noting that Appellant failed to raise this issue before the trial court and therefore any error must have affected the outcome of the trial in this matter.

**{¶51}** Here, Appellant entered pleas of guilty to Counts 1 through 11.  He is not challenging his convictions or sentences on Counts 1 and 2 which resulted in a sentence of 14 years (4 years on each count plus 3 years on each firearm specification, all to run consecutively) or his sentence on Count 8.  Appellant was also sentenced to four years on Count 3, which was ordered to be served consecutive to Counts 1 and 2. On Counts 4 through 7 and 9 through 11, Appellant received four years on each count, which were to run concurrent to each other and the sentences imposed on Counts 1, 2 and 3, resulting in an aggregate sentence of 18 years.  Even if we were to find an error in sentencing as claimed by Appellant, his sentence would not change as all the remaining counts run concurrently.  His sentence would still be 18 years.  We therefore find any alleged error would be harmless and would not have affected the outcome in this matter.

**{¶52}** Appellant's Second Assignment of Error is overruled.

**III**

**{¶53}** In his Third Assignment of Error, Appellant argues that the trial court violated his due process rights by imposing consecutive sentences. We disagree.

**{¶54}** Appellant argues that the trial court failed to state its reasons why consecutive sentences should be imposed in this case.

**{¶55}** 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-Foster. *See State v. Wells,* 8th Dist. Cuyahoga No. 98428, 2013–Ohio–1179, ¶ 11. These revisions to the felony sentencing statutes now require a trial court to make specific findings when imposing consecutive sentences. Nonetheless, "[a]lthough H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence." *State v. Bentley,* 3rd Dist. Marion No. 9–12–31, 2013–Ohio– 852, ¶ 12, citing *State v. Frasca,* 11th Dist. Trumbull No. 2011–T–0108, 2012–Ohio– 3746, ¶ 57. The record must clearly demonstrate that consecutive sentences are not only appropriate, but are also clearly supported by the record. *See State v. Queer,* 5th Dist. Ashland No. 12–COA–041, 2013–Ohio–3585, ¶ 21.

**{¶56}** R.C. § 2929.14(C)(4) provides, in relevant part:

**{¶57}** "If multiple prison terms are imposed on an offender for convictions of multiple offenses the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the

public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶58}** "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶59}** "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶60}** "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

**{¶61}** We have consistently stated the record must clearly demonstrate consecutive sentences are not only appropriate, but are also clearly supported by the record. *See State v. Fauntleroy,* 5th Dist. No. CT2012–0001, 2012–Ohio–4955; *State v. Bonnell,* 5th Dist. No. 12CAA3022, 2012–Ohio–515.

**{¶62}** In other words, in reviewing the record we must be convinced the trial court imposed consecutive sentences because it had found consecutive sentences were necessary to protect the public or to punish the offender, they are not disproportionate to the seriousness of his conduct and the danger the offender poses to

the public. In addition, in reviewing the record we must be convinced that the trial court found the offender's history of criminal conduct demonstrated consecutive sentences were necessary to protect the public from future crime, or the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense, or at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. R.C. § 2929.14(C)(4).

{¶63} Here, upon review, we find that the trial court set forth its findings to support the imposition of consecutive sentencing as required by R .C. § 2929.14(C)(4). The trial court had heard a day's worth of evidence which included testimony from the Trooper and most of the victims. The trial court had also seen the surveillance videos.

{¶64} At the sentencing hearing following Appellant's pleas, the trial court articulated its findings as follows:

{¶65} "In your own words. I am troubled by this case from the standpoint I have before me a juvenile. But what is bothersome to the Court is that there doesn't seem to be, even, now, an understanding or a full comprehension on your part of what it would be like to have someone put a gun in your face and force you to lay down, not knowing whether or not they are experiencing the last moment of their life or not.

{¶66} "You use the phrase "and if someone was hurt.'"

**{¶67}** "Well, it, it demonstrates to me you still don't get it, that when people go in and they waive [sic] a gun at someone in this day and age, the individual likely feels they may well die. This isn't something you get over within a year, multiple years.

**{¶68}** "You may well have a life sentence. Hopefully that isn't the case. But the fact of the matter is these are the type of offenses that are the most egregious from the standpoint of guns and violence and the security with which some individual feels that they may never have again.

**{¶69}** "While you may, your -- this conduct just needs to be addressed.

**{¶70}** " ***

**{¶71}** "I'm looking at you. I'm looking at your conduct. I'm looking at the number of offenses. I'm looking at the video that I watched yesterday of individuals being pushed to the floor.

**{¶72}** "And as I indicated to you, when you see things, you can hear things in a pretrial conference, but when you actually watch them, it has a whole new meaning for you. And it [sic] can only speculate on to how it felt for the individuals involved, because it was frightening even to watch." (Sent. T. at 304-307).

**{¶73}** Based on the above and a review of the record before us, we find that such record clearly demonstrates consecutive sentences are not only appropriate, but are also clearly supported by the record.

**{¶74}** Appellant's Third Assignment of Error is overruled.

## IV, V, VI

{¶75} In his Fourth, Fifth and Sixth Assignments of Error, Appellant argues the mandatory transfer provisions in R.C. §2152.10(a)(2)(b) and R.C. §2152.12(a)(1)(b) violate his constitutional rights.  We disagree.

{¶76} Specifically, Appellant argues that the mandatory transfer provisions set forth in  R.C. §2152.10(A)(2)(B) and R.C. §2152.12(A)(1)(B) violate his rights to Due Process, Equal Protection and the Prohibition against Cruel and Unusual Punishments under the United States and Ohio Constitutions.

{¶77} The Ohio Supreme Court has held that "a defendant who * * * voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004–Ohio–3167, ¶ 78, quoting *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). This Court has explained that "[a] defendant who enters a plea of guilty waives the right to appeal all nonjurisdictional issues arising at prior stages of the proceedings, although [he] may contest the constitutionality of the plea itself." *State v. Atkinson,* 9th Dist. Medina No. 05CA0079–M, 2006–Ohio–5806, ¶ 21, quoting *State v. McQueeney,* 148 Ohio App.3d 606, 2002–Ohio–3731, ¶ 13 (12th Dist.).

{¶78} Whether the Revised Code's mandatory bind-over provisions are constitutional does not implicate the common pleas court's jurisdiction. Under Sections 2151.23(H) and 2152.12(I), the common pleas court's general division has jurisdiction over any case that is transferred to it from the juvenile court, regardless of whether it is a mandatory bind-over under Section 2152.12(A) or a discretionary bind-over under

Section 2152.12(B). R.C. 2151.23(H); 2151.12(I). *State v. Wilson,* 73 Ohio St.3d 40, 44 (1995)

**{¶79}** In his appellate brief, Appellant does not argue that his pleas were not knowing, intelligent, or voluntary. Rather, he argues that the juvenile court should not have transferred his case to adult court. By pleading guilty to aggravated robbery, however, he waived his right to challenge the constitutionality of the mandatory transfer provisions, which involved an earlier stage of the proceeding. *State v. Ketterer,* 111 Ohio St.3d 70, 2006–Ohio–5283, ¶ 105 (explaining that defendant's "guilty plea waived any complaint as to claims of constitutional violations not related to the entry of the guilty plea.").

**{¶80}** Appellant's Fourth, Fifth and Sixth Assignments of Error are overruled.

**VII**

**{¶81}** In his Seventh and final Assignment of Error, Appellant claims he was denied the effective assistance of counsel. We disagree.

**{¶82}** The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

**{¶83}** Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. ( *State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

**{¶84}** To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

**{¶85}** Appellant argues he was prejudiced by his trial counsel's failure in not objecting to the constitutionality of his transfer to adult court. "A guilty plea waives the right to appeal issues of ineffective assistance of counsel, unless the ineffective assistance of counsel caused the guilty plea to be involuntary." *State v. Bennett,* 6th Dist. Wood No. WD–08–005, 2008–Ohio–5812; *State v. Carroll,* 9th Dist. Lorain No. 06CA009037, 2007–Ohio–3298, ¶ 5. In his brief, Appellant has not argued that his attorney's allegedly deficient performance caused the entry of his guilty plea to be less than knowing, intelligent, and voluntary. *State v. Dallas,* 9th Dist. Wayne No. 06CA0033, 2007–Ohio–1214, ¶ 4. We, therefore, conclude that he has also waived his ineffective assistance of counsel claim.

**{¶86}** By pleading guilty to the charges of aggravated robbery, Appellant waived his right to appeal the constitutionality of the mandatory transfer provisions and his attorney's failure to object to their application.

{¶87} Appellant's Seventh Assignment of Error is overruled.

{¶88} For the foregoing reasons, the decision of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 021